IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 5, 2013

## PERVIS TYRONE PAYNE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P9594      J. Robert Carter, Judge**

_____

**No. W2013-01248-CCA-R3-PD  - Filed October 30, 2014**

_____

CAMILLE R. MCMULLEN, J., concurring in part and dissenting in part.

For the reasons that follow, I would remand this matter for an evidentiary hearing in order to determine whether the Petitioner is intellectually disabled. To the extent the majority differs from this conclusion, I respectfully disagree.

This capital Petitioner's case has been subject to extensive appellate review in both state and federal courts for more than twenty years.[1] During that time, the landscape for how Tennessee courts determine whether an individual facing the death penalty is intellectually disabled dramatically changed. The United States Supreme Court and the Tennessee Supreme Court held that the execution of the intellectually disabled is prohibited by the Eighth Amendment of the United States Constitution and article I, section 16 of the Tennessee Constitution. Atkins v. Virginia, 536 U.S. 304, 321 (2002); State v. Howell, 151 S.W.3d 450, 455 (Tenn. 2004); State v. Van Tran, 66 S.W.3d 790, 798-99 (Tenn. 2001); see T.C.A. § 39-13-203(b). Even after the Petitioner's case was argued and submitted to this

_____

[1] State v. Payne, 791 S.W.2d 10 (Tenn. 1990) (affirming conviction and sentence); Payne v. Tennessee, 501 U.S. 808, reh'g denied, 501 U.S. 1277 (1991) (granting certiorari on the limited issue of the admissibility of victim impact evidence); Pervis Tyrone Payne v. State, No. 02C01-9703-CR-00131, 1998 WL 12670 (Tenn. Crim. App. Jan. 15, 1998), perm. app. denied (Tenn. June 8, 1998) (affirming denial of post-conviction relief); Payne v. Bell, 194 F. Supp.2d 739 (W.D. Tenn. 2002) (denial of habeas corpus relief); Payne v. Bell, 399 F.3d 768 (6th Cir. 2005) (granting temporary relief based on the use of the heinous, atrocious, or cruel aggravating circumstance instruction violated the Petitioner's Eighth Amendment rights, and the Tennessee state court's rejection of the Petitioner's challenge was contrary to clearly established United States Supreme Court precedent); Payne v. Bell, 418 F.3d 644 (6th Cir. 2005), cert. denied, 548 U.S. 908 (2006) (affirming district court's denial of habeas corpus relief upon rehearing); Pervis Payne v. State, No. W2007-01096-CCA-R3-PD, 2007 WL 4258178 (Tenn. Crim. App. Dec. 5, 2007), perm. app. denied (Tenn. Apr. 14, 2008) (affirming denial of motion to compel testing of evidence under the Post-Conviction DNA Analysis Act of 2001).

court, the United States Supreme Court further refined the rule in Atkins by invalidating a Florida intellectual disability statute, as interpreted by its courts, as unconstitutional. Hall v. Florida, 572 U.S. ——, 134 S. Ct. 1986, 1990 (2014).

Significantly, the capital petitioner in Hall was convicted, sentenced, and denied post-conviction relief before the Supreme Court ruled that executing intellectually disabled individuals violated the Eighth Amendment. Two years after Atkins, Hall filed his motion claiming that he was intellectually disabled. Florida provided Hall with a hearing, albeit five years later, but rejected his claim. It reasoned that Florida law required, as a threshold matter, that Hall show an IQ test score of 70 or below before presenting any additional evidence of his intellectual disability. The Supreme Court reversed and rejected Florida's IQ cut-off rule as well as the court's failure to take into account the standard error of measurement when determining whether an individual was intellectually disabled. Hall, 134 S. Ct. at 1990. In doing so, it held that "when a defendant's IQ test score falls within the test's acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits." See id. at 2000-01. The Court stated:

> The death penalty is the gravest sentence our society may impose. Persons facing that most severe sanction must have a fair opportunity to show that the Constitution prohibits their execution.

Id.

I view the procedural posture of this case no differently than in Hall. Just as in Hall, the Petitioner has not been afforded the opportunity to present evidence of his intellectual disability or deficits in adaptive functioning over his lifetime to any court in this State. This case is distinguishable from several other cases in which an Atkins-based claim has been made and denied by this court, see, e.g., Tyrone Chalmers v. State, No. W2013-023170CCA-R3-PD, 2014 WL 2993863 (Tenn. Crim. App. June 30, 2014) and Dennis Wade Suttles v. State, No. E2013-01016-CCA-R3-PD, 2014 WL 2902271 (Tenn. Crim. App. June 25, 2014), because the Petitioner was precluded during his original trial, sentencing, and post-conviction proceedings from presenting evidence, other than his raw IQ test scores, to establish that his "functional intelligence quotient" when he committed capital murder was 70 or below. Dr. Reschly's affidavit states that the Petitioner's functional IQ is seventy or below. This is sufficient to trigger a hearing pursuant to Hall. See also Sidney Porterfield v. State, No. W2012-00753-CCA-R3-PD, 2013 WL 3193420, at * 2 (Tenn. Crim. App., June 20, 2013) (granting Rule 28 motion and remanding for hearing based on expert's consideration of factors other than raw IQ test scores of 67, 72, and 91 in concluding that petitioner was

intellectually disabled). Although <u>Atkins</u> left to the states the task of developing appropriate ways to enforce the constitutional prohibition against executing an intellectually disabled individual, such discretion is not unfettered. <u>Hall</u>, 134 S. Ct. at 1998. A state cannot execute a person whose IQ test score falls within the test margin of error, as in this case, *unless that individual has been able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits.* <u>Id.</u> (emphasis added).

The Petitioner may or may not be intellectually disabled, but <u>Atkins</u> and <u>Hall</u> require that he have an opportunity to present evidence of his intellectual disability, including deficits in adaptive functioning over his lifetime. The Petitioner has been denied this opportunity. I am unable to ignore the fact that, given the posture of this case, Tennessee runs the risk of executing an intellectually disabled individual in violation of both the federal and state constitutions. Accordingly, I would remand this matter to the trial court for reconsideration in light of <u>Hall</u>.

Additionally, I conclude that the Petitioner is not barred by the statute of limitation and I would remand for an evidentiary hearing in order to determine whether or not the Petitioner is intellectually disabled.[2] The Petitioner concedes that he filed his petition for writ of error coram nobis over twenty years after the one-year statute of limitations expired.[3] The majority agrees with the trial court and concludes that the Petitioner's claim is barred by the statute of limitation because it is not "later-arising." In other words, the trial court believed that the information in Dr. Reschly's affidavit concluding that the Petitioner was intellectually disabled could have been discovered prior to the trial. The State also asserted that a strict application of the limitations period would not effectively deny the Petitioner a reasonable opportunity to present this claim because he has had prior reasonable opportunities to raise his claim of intellectual disability but failed to do so.

The Petitioner contends that Dr. Reschly's report is "newly available" evidence or evidence that did not become available for presentation until after the trial concluded. While the Petitioner acknowledges that his intellectual disability existed before trial, he argues that circumstances beyond his control prevented him from presenting such evidence. He submits

---

[2] In <u>Keen v. State</u>, 398 S.W.3d 594, 613 (Tenn. 2012), the majority did not foreclose "any other remedy currently available to [the petitioner]. If he is indeed intellectually disabled, this issue deserves to be heard. Likewise, it does not foreclose the ability of the General Assembly to create a procedure that accommodates prisoners on death row whose intellectual disability claims cannot be raised under Tenn. Code Ann. § 40-30-117(a)(1) or (2)."

[3] This is the Petitioner's second petition for a writ of error coram nobis. His first petition was denied by this court in <u>Payne v. State</u>, No. 02C01-9703-CR-00131, 1998 WL 12670 (Tenn. Crim. App., January 15, 1998).

that his intellectual disability first became available for presentation following our supreme court's opinion in Coleman v. State, 341 S.W.3d 221 (Tenn. 2011). I agree.

As previously noted, intellectual disability was not recognized as rendering a defendant ineligible for the death penalty at the time of the Petitioner's trial in 1988. Tennessee Code Annotated section 39-13-203, prohibiting the execution of intellectually disabled defendants, was not enacted until 1990 and did not apply retroactively. See Howell, 151 S.W.3d at 455; Van Tran, 66 S.W.3d at 798-99. Rather, it was not until 2001, after the Petitioner's post-conviction proceedings concluded in 1996, that our supreme court recognized that the execution of an intellectually disabled defendant is constitutionally prohibited. See Van Tran, 66 S.W.3d at 798-99. Accordingly, the Petitioner's ground for relief that he is ineligible for the death penalty arose after the limitations period normally would have commenced.

The majority, agreeing with the State, asserts that the Petitioner should have sought relief by filing a motion to reopen his post-conviction petition following the Tennessee Supreme Court's decision in Van Tran in 2001 or the United States Supreme Court's decision in Atkins in 2002. See T.C.A. § 40-30-117(a)(1) (providing for a motion to reopen post-conviction proceedings if filed within one year of a "final ruling of an appellate court establishing a constitutional right that was not existing at the time of trial, if retrospective application of that right is required"). In 1987, prior to trial, the Petitioner received an IQ score of 78 on the WAIS-R. In 1996, around the time of post-conviction proceedings, he received the same score on the WAIS-R.[4] Pursuant to Howell and opinions from this court applying Howell, the demarcation of an IQ score of 70 was a "bright-line" rule that was required to be met. See Howell, 151 S.W.3d at 456-59; Perry Anthony Cribbs v. State, No. W2006-01381-CCA-R3-PD, 2009 WL 1905454, at *37, *40 (Tenn. Crim. App. July 1, 2009), perm. app. denied (Tenn. Dec. 21, 2009); Byron Lewis Black v. State, No. M2004-01345-CCA-R3-CD, 2005 WL 2662577, at *14, *17-18 (Tenn. Crim. App. Oct. 19, 2005), perm. app. denied (Tenn. Feb. 21, 2006). In Howell, the Tennessee Supreme Court held that "[t]he statute should not be interpreted to make allowance for any standard error of measurement or other circumstances whereby a person with a IQ above seventy could be considered [intellectually disabled]." Howell, 151 S.W.3d at 456. Thus, under Howell and this court's interpretation of Howell, the Petitioner's request for relief would have been denied had he filed a motion to reopen following the release Van Tran or Atkins. I cannot

---

[4] At his sentencing hearing, a clinical psychologist testified that the Petitioner had "a full scale IQ of 78 with a variance of plus or minus three, with a verbal IQ of 78, plus or minus 3, and a performance IQ of 82, plus or minus 4," thus, placing the Petitioner "approximately one standard deviation below the norm of average intelligence."

fault the Petitioner for failing to seek relief when based on our law the request would not have been successful.

It was not until 2011, slightly over a year from the date of the Petitioner's coram nobis filing, that our supreme court clarified in Coleman that "trial courts may receive and consider any relevant and admissible evidence regarding whether the defendant's functional IQ at the time of the offense was seventy (70) or below." Coleman, 341 S.W.3d at 241. The court held in Coleman that courts were not limited to raw test scores, but could also consider other factors such as the Flynn Effect, the practice effect, the standard error of measurement, malingering, and cultural differences. Id. at 242 n.55, 247; see Keen, 398 S.W.3d at 608. Dr. Reschly applied these factors in concluding that the Petitioner's functional IQ is seventy or below. Given the demonstrated flux in this area of Tennessee law, I would conclude that Dr. Reschly's report constitutes "newly available" evidence and that the Petitioner's claim that he is ineligible for the death penalty due to intellectual disability is a later-arising ground.[5]

Finally, I conclude that the principles of due process demand that this Petitioner be allowed to have the opportunity to present evidence of his intellectual disability. Tennessee courts must balance "the governmental interests involved and the private interests affected by the official action." Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001). In this case, the governmental interest in asserting the statute of limitation is the prevention of stale and groundless claims. See id. The private interest involved is the Petitioner's opportunity to have a hearing on grounds that he is ineligible for the death penalty due to intellectual disability. If the statute of limitations is applied, the Petitioner will be forever barred from any opportunity to have the merits of his claim evaluated by a court of this State. In my view, the Petitioner's interest in obtaining a hearing to present evidence that may establish that he is intellectually disabled and, therefore, ineligible for the death penalty outweighs any governmental interest in preventing the litigation of stale claims. It bears repeating that the Petitioner was precluded from raising this issue during the trial and post-conviction proceedings because the constitutional ban against the execution of intellectually disabled defendants had not yet been recognized. Prior to Coleman, courts did not permit the consideration of evidence other than raw IQ scores to determine a defendant's functional IQ. As a result, any attempt by the Petitioner to seek relief would have been futile.

The Petitioner is now foreclosed from seeking any other form of post-conviction relief because it is questionable whether Coleman has retrospective application. See Keen, 398

_____

[5] Harris v. State, 301 S.W.3d at 160-61 (Koch, J., concurring) (quoting Taylor v. State, 171 S.W.2d 403, 405 (Tenn. 1943)); see David G. Housler, Jr. v. State, No. M2010 02183-CCA-R3-PC, 2013 WL 5232344, at *44 (Tenn. Crim. App. Sept. 17, 2013).

S.W.3d at 609 (concluding that it was unnecessary to address retroactivity because <u>Coleman</u> concerned the interpretation and application of Tenn. Code Ann. § 39-13-203 and was not a constitutional ruling). At the top of this opinion, I outlined the lengthy appellate history of this case and the fact that it is now over twenty-four years old. At the very least, an argument can be made that judicial economy necessitates a hearing based on the federal courts repeated retroactive application of <u>Coleman</u> to Tennessee's implementation of the rule in <u>Atkins</u>. <u>See</u> <u>Black v. Bell,</u> 664 F.3d 81, 92 (6th Cir. 2012) (vacating district court's denial of <u>Atkins</u> claim and remanding for reconsideration in light of retrospective application of <u>Coleman</u>); <u>Van Tran v. Colson</u>, 764 F.3d 594, 617-619 (6th Cir. 2014) (applying <u>Coleman</u> retroactively to <u>Atkins</u> claim and granting a writ of habeas corpus prohibiting imposition of the death penalty, conditioned upon the fresh determination by the Tennessee courts whether the petitioner was intellectually disabled under the clarified principles set out in <u>Coleman</u>). As it stands, no court in this State has held a hearing to fully evaluate the strength of the Petitioner's Eighth Amendment based intellectual disability claim.

Following the release of <u>Coleman</u> on April 11, 2011, the Petitioner filed a motion to reopen post-conviction proceedings on April 4, 2012. Once the Tennessee Supreme Court released its opinion in <u>Keen</u> on December 20, 2012, the Petitioner amended his motion on December 27th to include a petition for writ of error coram nobis. The time within which the Petitioner filed his petition does not exceed the reasonable opportunity afforded by due process.[6] Rather, "'the magnitude and gravity of the penalty of death persuades [me] that the important values which justify limits on untimely . . . petitions are outweighed'" by the Petitioner's interest in having a court evaluate evidence that may show that he is ineligible for the death penalty. <u>Workman</u>, 41 S.W.3d at 103-04 (quoting <u>In re Clark</u>, 5 Cal. 4th 750, 855 P.2d 729, 760 (Cal. 1993)). As our supreme court has recognized, "Tennessee has no business executing persons who are intellectually disabled." <u>Keen</u>, 398 S.W.3d at 613. Under this narrow set of circumstances, the Petitioner has made a threshold showing to warrant an evidentiary hearing. I would reverse the judgment of the trial court and remand

---

[6] Interestingly, courts that have considered this issue "agree that the claim may be asserted at any stage of the proceedings, presumably up to the moment of execution." <u>See</u> <u>Bowling v. Com.</u>, 163 S.W.3d 361, 370-71 (Ky. 2005), as modified (Apr. 22, 2005) (collection of cases including <u>In re Holladay</u>, 331 F.3d 1169, 1173, 1176 (11th Cir. 2003) (granting successive habeas petition asserting entitlement to mental retardation exemption, staying execution three days before date of scheduled execution, and observing that petitioner's mental retardation claim had never been adjudicated); <u>In re Morris</u>, 328 F.3d 739, 740 (5th Cir. 2003); <u>State v. Williams</u>, 831 So.2d 835, 851 n.21 (La. 2002) ("The mandate of <u>Atkins</u> that the State may not execute a mentally retarded person is retroactive to any case at any stage of the proceedings, . . . in which the defendant is facing the prospect of capital punishment."); <u>State v. Lott</u>, 97 Ohio St.3d 303 (2002) (<u>Atkins</u> was decided after the execution date was set; principle of res judicata did not bar the claim because petitioner had not been afforded the opportunity to fully litigate the issue)).

this matter for a hearing to determine whether the Petitioner is in fact intellectually disabled and entitled to the issuance of a writ of error coram nobis.

_____
CAMILLE R. McMULLEN, JUDGE