IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2014

**DAVID LYNN SMITH v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-04399    James M. Lammey, Jr., Judge**

**No. W2012-02578-CCA-R3-PC  -  Filed April 17, 2014**

The petitioner, David Lynn Smith, appeals the denial of his petition for post-conviction relief. The petitioner was convicted of second degree murder and is currently serving a sentence of twenty-four years in the Department of Correction. On appeal, he contends that the denial of his petition was error because he was denied his right to the effective assistance of counsel. Specifically, he contends that trial counsel was ineffective by: (1) failing to adequately prepare the petitioner to testify at trial; and (2) failing to investigate and interview an alibi witness. The petitioner further argues that the post-conviction court committed reversible error by refusing to exclude trial counsel from the post-conviction proceedings pursuant to Rule 615 of the Tennessee Rules of Evidence. Following review of the record and applicable law, we conclude that the petitioner was not denied his right to the effective assistance of counsel, and no Rule 615 violation was established. Therefore, we conclude that the petition was properly denied and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Kendra L. Tidwell, Memphis, Tennessee, for the appellant, David Lynn Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History and Factual Background**

The conviction against the petitioner arose from his shooting of the victim, Horace Brewer, in February 2007. *State v. David Smith*, No. W2009-02002-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 508, *2 (Tenn. Crim. App. Jun. 17, 2010). The victim's fiancee and the petitioner worked together at Technicolor Thompson in 2003. *Id*. at *4. During that period, the two got into a verbal altercation and had to be physically separated to prevent it from escalating. *Id*. Afterwards, "both seemed to hold a grudge . . . [and] didn't really want to deal with each other." *Id*. at *5. When the victim found out about the dispute, he was mad. However, his fiancee never personally witnessed any dispute between the victim and the petitioner. *Id*.

Around 9:30 a.m. on February 24, 2007, the victim left his home and went to a nearby laundromat. *Id*. at *5. Shortly thereafter, Regina Payne, a beautician in a shop adjacent to the laundromat, heard five gunshots. She observed two men walking away and was told that someone had been shot. *Id*. at *2-3. Ms. Payne went to the victim, who was unable to move the lower part of his body, and attempted to calm him by talking to him. *Id*. at *3. She asked the victim if he had been fighting, and he responded that he had not. The victim told Ms. Payne that "a man named David who 'used to work with [his] gal' shot him." *Id*. The victim also told Ms. Payne that the two had gotten into an argument four years ago. *Id*. Upon learning that the victim had been shot, his fiancee went to the laundromat, where she found him unable to breathe very well. She asked the victim what had happened, and he told her that "David shot [him]. David that works with [her] at Technicolor." *Id*. at *6. She later identified "David," the petitioner, from a photographic array. *Id*.

At approximately, 10:00 a.m., Daniel Mayer was in the area doing service calls and was at an intersection near the strip center where the laundromat was located. *Id*. at *7. He heard the gunshots and observed the gunman, wearing a dark colored hoodie, standing in front of the laundromat shooting down at the ground. *Id*. After the gunman stopped shooting, he went toward the street and got into the driver's side of a maroon and tan Grand Marquis car. Mr. Mayer noted a description of the vehicle, which he relayed to the police. *Id*. at *8.

Shortly after 11:30 a.m., Officer Sean Boyette with the Memphis Police Department spotted a car matching the description he received from the radio broadcast. *Id*. at *9. After confirming that the license plate number on the vehicle matched that of the suspect vehicle, Officer Boyette initiated a traffic stop. The petitioner was the driver of the car, and his brother was in the passenger seat. *Id*.

-2-

Based upon these actions, the petitioner was indicted by a Shelby County Grand Jury for first degree premeditated murder. At trial, the theory of defense was that of alibi. Both the petitioner and his sister testified that he was at home during the time-frame of the murder. *Id*. at *12-14. However, after hearing all the evidence presented, the jury convicted the petitioner of the lesser offense of second degree murder, and he was sentenced to twenty-four years in the Department of Correction. He filed a notice of appeal with this court raising multiple challenges to his conviction and sentence. After review, this court affirmed, and the Tennessee Supreme Court denied application for permission to appeal.

Thereafter, the petitioner filed a timely pro se petition for post-conviction relief alleging multiple instances of ineffective assistance of counsel. Following the appointment of counsel, two subsequent amended petitions were filed. A hearing was held, and the petitioner and trial counsel testified. At the beginning of the hearing, the petitioner requested that trial counsel be excluded from the courtroom during the petitioner's testimony pursuant to Tennessee Rule of Evidence 615. The post-conviction court denied the request.

The petitioner testified that trial counsel was appointed in 2007 and that his trial did not occur until 2009. He testified that he had court appearances multiple times during that period, and he spoke with trial counsel and discussed the case during those appearances. Trial counsel also visited him at the jail two to three times. The petitioner acknowledged that trial counsel had discussed defenses and explained what he was going to try and show in the petitioner's defense. He further acknowledged that trial counsel discussed the facts of the case with him and had generally told him how the trial would proceed. The petitioner testified that trial counsel had discussed his right to testify with the petitioner. He acknowledged that he was aware that the decision of whether to testify was his right and that only he could make the decision. During the two years prior to trial, the petitioner consistently maintained that he did not want to testify. However, during the actual defense presentation at trial, the petitioner's sister was called as an alibi witnesses. After her testimony, the petitioner believed that "things were going really bad." Thereafter, the petitioner was placed on the witness stand for voir dire. During voir dire, the petitioner stated that he now wanted to testify and asked the court to allow him to speak with trial counsel.

The petitioner and trial counsel left the courtroom and had a discussion which lasted approximately eight minutes. Trial counsel informed the petitioner that it was not a good choice for him to testify. During this period, the petitioner maintains there was no preparation for or discussion of how the petitioner would testify. The entire discussion involved only that trial counsel was advising the petitioner not to take the stand. There was no discussion of possible questions which might be asked of the petitioner during his testimony or what he could expect during cross examination. The petitioner also testified

that no preparation to testify was ever done during the entire two-year representation by trial counsel. He stated that trial counsel had never prepared him to testify or explained to him how to behave in front of a jury. Upon their return to the courtroom, trial counsel did not request a continuance in order to prepare the petitioner for his testimony. Instead, the petitioner was immediately called to the stand to testify. At the post-conviction hearing, the petitioner testified that he was not prepared for what was asked of him during the trial, stating that he did not even understand some of the questions which were asked.

At the post-conviction hearing, the petitioner testified that he believed that trial counsel should have prepared him for what types of questions would be asked. He stated that he trusted trial counsel to get him ready to testify. However, the petitioner did acknowledge that he had been present throughout the whole trial and had heard the types of questions which the State was asking on cross examination. The petitioner also testified that he had given trial counsel the name of a potential alibi witness, Denisha Johnson, but she was not called to testify. He acknowledged that no mention of this possible witness was contained in his written police statement. However, he testified that he told police he was at home with "his girl" at the time of the murder but did not give police her name. The petitioner also stated that, at the time of trial, he had not heard from Ms. Johnson in over a year and a half.

Trial counsel testified that he was appointed to represent the petitioner on a first degree murder indictment and that the representation continued for two years. He testified that he met with the petitioner several times, both in court and at the jail, and that they discussed the case in general and possible defense strategies. Trial counsel provided the petitioner a copy of discovery and reviewed the materials with him.

Trial counsel testified that he and the petitioner had decided that the petitioner would not testify at trial. Trial counsel acknowledged that he did in fact advise the petitioner not to take the stand. He saw no need to subject the petitioner to cross examination when the petitioner's sister was already testifying with regard to the alibi. Trial counsel recalled several discussions with the petitioner during the weeks leading up to trial about the subject. The petitioner appeared to agree with trial counsel's advice and maintained that he would not be testifying at trial. During the *Momon* hearing, the petitioner apparently changed his mind about that decision. Trial counsel testified that the petitioner initially responded that he did not want to testify. However, upon further questioning by the trial court, the petitioner stated that he did want to testify and asked to speak with trial counsel.

During the ten to fifteen minute recess, trial counsel acknowledged that nothing was done in preparation for the petitioner's testimony. The petitioner simply informed him that he was going to testify, and trial counsel advised him that it was not a good idea. However, trial counsel was aware that the ultimate decision rested with the petitioner. Immediately

following the recess, the petitioner took the stand. According to trial counsel, the petitioner was a "very bad witness" and the case was damaged on cross examination.

Trial counsel testified that he had previously gone over questions with the petitioner during their trial preparation early in the case. He testified that this was done in conjunction with the petitioner making the decision of whether he wanted to testify. Trial counsel noted that they discussed the chronology of the events and how the prosecution would lay out the case at trial. They also reviewed all the discovery and discussed the petitioner's version of the event. Approximately one week before trial, trial counsel visited the petitioner at the jail and discussed what was going to occur at trial and potential witness testimony. He also discussed how the petitioner should comport himself at trial. Trial counsel acknowledged that this was not the same as preparing the petitioner to take the stand.

Trial counsel testified that he did not request an additional recess or a continuance after the petitioner chose to testify. First, he testified that it was not his experience that the trial court would grant such a request in these situations. Moreover, he felt there was no need to as he already knew what the petitioner was going to testify to from prior discussions. Earlier in preparation for trial, trial counsel had prepared an outline of the questions he planned to ask the petitioner, and he believed he had reviewed possible cross examination questions with the petitioner. He further recalled warning the petitioner that the attorney for the State would be very aggressive on cross examination. Trial counsel stated that he "prepared [the petitioner] to the best of [his] knowledge what would happen." Trial counsel acknowledged that he only asked the petitioner one question on redirect examination after the State's brutal cross examination. The question asked was whether the petitioner had killed the victim. The petitioner responded in the negative. Trial counsel testified that he saw nothing else he could have asked to rehabilitate the petitioner and that the single question precluded any re-cross examination.

With regard to the alibi defense, trial counsel testified that he and the petitioner did discuss it. However, the only possible alibi witnesses that the petitioner informed trial counsel of were the petitioner's sister and brother. The petitioner's sister testified at trial, but his brother did not for tactical purposes. Trial counsel testified that the petitioner never mentioned Ms. Johnson to him.

After hearing the evidence presented in the case, the post-conviction court determined that the petitioner was not entitled to relief and denied the petition. The petitioner has now timely appealed that denial.

**Analysis**

On appeal, the petitioner has raised two issues for our review. First, he asserts that he was denied his right to the effective assistance of counsel. Specifically, he contends that trial counsel was ineffective by failing to adequately prepare the petitioner to testify and by failing to investigate and interview an alibi witness. Second, he contends that the trial court committed reversible error by refusing to exclude trial counsel from the post-conviction proceedings pursuant to Tenn. R. Evid. 615.

In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical

decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigation must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. "Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 932-33.

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

## I. Ineffective Assistance of Counsel

### a. Preparation of the Petitioner to Testify

The petitioner contends that trial counsel failed to prepare him to exercise his right to testify on his own behalf, thus rendering ineffective assistance of counsel. He asserts that trial counsel had a duty to see that the petitioner was prepared to take the stand no matter how strongly trial counsel disagreed with the decision. In its order denying relief, the post-conviction court made the following findings:

> [With regard to] the preparation for [the petitioner's] testimony. Even though it was always apparent to [trial counsel] that his client was not intending on taking the stand, nevertheless, over the two years that he had [the petitioner] as a client, he, nevertheless, went through all the proof with him; and, from his testimony, had questions just in case he changed his mind that, "This is what I would ask you - and these are the questions that I would ask." And he did that when the time came - when [the petitioner] decided to change his mind and testify. His direct examination was adequate, and it was reasoned to [trial counsel], of course. I haven't read it in detail; but it hasn't been alleged that he didn't ask but two questions; but it has been alleged that as proof of his lack of preparation, he only asked one question on redirect.

> Now, there was not any testimony about the two prosecutors in this case. . . . [B]oth - I don't know which one did the cross examination; but I know that either one would do a very thorough job and actually rip you to shreds. I would not want them to cross-examine me.

> But [the petitioner] had the opportunity to observe them on direct throughout the whole [S]tate's case and also to cross-examine [his] sister. So, he knew what he was getting into. I believe [trial counsel], over the testimony of [the petitioner], as to the preparation, I believe that he did go above and beyond - especially since he didn't think he was going to testify anyway. He, nevertheless, took the time, over those two years - he wasn't sure of the dates and things; but he took the time to go through the list of questions - go through the discovery- provide a copy of the discovery to him; and nevertheless, prepare him for the questions that would have come his way. And then, of course, he tried his best to talk him out of testifying because he didn't see any reason for it - that the testimony from his sister had covered the topics - they covered alibi. And so placing him on the stand wouldn't really help anything; and it would subject him to rigorous cross examination. So, knowing all of that, and asking only one question on redirect is a real, real smart thing to do. If your client ripped him to shreds on cross examination, then you wouldn't mind getting up on redirect and asking a lot more questions because the prosecution has to limit their questions on recross. They have to limit their

questions to whatever we brought up on redirect. So, if he would have gone into mountains of more questions, that would have just given them an opportunity to get back up and do it again. So, asking one question was brilliant. It really was - one question: "Did you kill him?" - "No, I did not." Sit down because if he would have asked anymore questions, they would have got back up and gotten carte blanche to go through all of it again. So, that was a brilliant thing to do.

I've never had an opportunity to see [trial counsel] in trial, but he presents himself very well here as a witness; so, I believe what he had to say. I believe he did, in fact, prep [the petitioner] adequately; and he warned him, and he knew what was coming; and he tried to tell him - he tried to tell [the petitioner] these things. But nevertheless, [the petitioner] decided he wanted to testify, much to his chargrin; but even so, I mean, the jury came back murder second degree, so somebody did something right.

Now, so as far as the lack of preparation for testifying, I find that that prong - that allegation is without merit. I believe the testimony of [trial counsel] over that of [the petitioner].

Again, the petitioner disagrees with the findings of the trial court. He bases his argument on the fact that trial counsel did not request a continuance, did not review questions which would be asked on direct, and did not prepare him for what to expect on cross examination. The petitioner states that it is "unreasonable" to rely upon preparation which occurred a year and a half prior to trial. He further faults trial counsel for only asking one question on redirect, making no effort to rehabilitate the petitioner's credibility after a very damaging cross examination.

Following our review of the record, we find nothing which preponderates against the post-conviction court's findings. First, the post-conviction court specifically accredited the testimony offered by trial counsel. As has been noted on multiple occasions, it is not the province of this court to reweigh or reevaluate credibility determinations made by the trier of fact. *See State v. Wilson*, 657 S.W.2d 405, 410-11 (Tenn. 1983); *see also Pappas*, 754 S.W.2d at 623. We, as a reviewing court, are precluded from reweighing those determinations.

Trial counsel testified that, although he believed that the petitioner would not be testifying, he nonetheless took steps to prepare him for trial. He testified that, during the two years of his representation of the petitioner, he reviewed the proof with the petitioner and reviewed all discovery. Trial counsel testified that he prepared an outline to use to question

-9-

the petitioner. He reviewed that outline with the petitioner, thus making the petitioner aware of the type of questions he would be asked should he choose to testify. Trial counsel stated that this was done in conjunction with the petitioner making the decision of whether to testify or not. Trial counsel acknowledged that he did not request a continuance but noted that he did not believe one would be granted simply because the petitioner had a sudden change of mind about testifying. Nor did he believe that the petitioner could benefit from more preparation to testify. As noted by the post-conviction court, the petitioner was present during the entire trial. He was surely aware of what type of questions were going to be asked from hearing the questions which were directed at other witnesses. In fact, he testified that he chose to testify because of how the State had damaged his sister's testimony during cross examination. He cannot now claim that he did not know that he would be faced with the same vigorous cross from the State. Like the post-conviction court, we agree that trial counsel took the time to "prepare [the petitioner] for the questions that would have come his way." Trial counsel prepared the petitioner to the best of his knowledge, specifically informing the petitioner on how to comport himself and making clear that the prosecutors would be aggressive. Knowing this, the petitioner still ignored trial counsel's advice and made the decision to testify. That does not equate to deficient performance by trial counsel.

Nor can we give credence to the petitioner's argument for deficient performance based upon the fact that trial counsel asked only one question on redirect. Trial counsel testified that he felt there was no way to rehabilitate the petitioner after the damaging cross examination by the State. He attempted to leave with the jury the all-important fact that the petitioner maintained that he did not kill the victim. Moreover, trial counsel did not want to open the door to more re-cross examination by the State, which could have been even more damaging to the case. Clearly, this decision was well-reasoned and tactical in nature. Reviewing courts are not to "second-guess" such tactical decisions made by attorneys at trial. *See Adkins*, 911 S.W.2d at 347. The petitioner has failed to establish that he is entitled to post-conviction relief on this issue.

### b. Failure to Investigate and Interview Alibi Witness

The petitioner also contends that trial counsel rendered ineffective assistance of counsel by failing to investigate and interview Denisha Johnson, a possible alibi witness. In his brief, the petitioner makes no argument supporting this bare allegation. In denying relief, the post-conviction court made the following findings of fact on the record:

> Now, let's talk about this alibi witness, Denisha Johnson, who was not called as a witness. The best proof - I mean, [trial counsel] testified that he never heard of her - didn't know who she was - but both the sister and

[petitioner] testified that she was there. Well, what is the best proof of that? - from what I heard - I didn't see the copy of the [petitioner's] statement, but from what I understand, there had been no - nothing put in the record that she was mentioned by name or anything else. It was always Ms. Smith, the sister of the [petitioner], who was the alibi witness.

And, furthermore, if [trial counsel] had known of this Denisha Johnson, he would have included that - he did respond to the notice of demand for alibi - and he did respond, like he was supposed to - there would have been nothing wrong in adding Denisha Johnson's name in there. Why would he not? I believe it's because he didn't have the name. And he didn't know this girl. He didn't know she existed until trial.

Let's assume that he found out during trial, and he tried to subpoena Ms. Johnson. Well, the rules would have said, "No way." You know, you didn't give notice of alibi timely, so you - this witness isn't testifying. That's what would have happened. So, it would have had no effect, whatsoever, on the outcome of this trial. But I don't believe that [the petitioner] provided that name, nor do I believe that [trial counsel] knew that there was another person there besides Demetria Smith and the [petitioner's] brother. I forgot his name - - were in the house. The brother wasn't called; and there was a strategic reason for not calling him.

. . . .

So, I believe [trial counsel's] testimony. I do not believe [the petitioner]. He's - you know, he has a motive to swear to a falsehood. He's serving twenty-four years. [Trial counsel] doesn't have a motive to swear to a falsehood. In fact, he did everything he could, in my opinion, to give [the petitioner] the best representation he could and the best advice that he could throughout this whole procedure - throughout the pretrial - throughout the trial; and his advice in saying, "Man, you don't need to testify - we don't need your testimony. You're just going to look bad"; and he knew he was going to look bad. And, nevertheless, [the petitioner] decided to testify.

You know, hindsight is always twenty/twenty, I suppose. Maybe they would have given more weight to the sister had the [petitioner] not testified. I don't know. But that's speculation.

So, as far as being ineffective for anything, I just don't see it.

-11-

Again, the post-conviction court made a specific credibility findings in this case accrediting the testimony of trial counsel that the petitioner never informed him of another possible alibi witness. As noted, it is not the function of this court to re-evaluate credibility determinations made by the trier of fact. *See Williams*, 657 S.W.2d at 410-11. Assuming then that trial counsel was unaware of the existence of this possible witness, it follows necessarily that he cannot be deficient in failing to investigate or interview her. The petitioner's assertion is clearly misplaced.

Moreover, the petitioner failed to call this alleged witness to testify at the post-conviction hearing. That failure precludes a finding of prejudice, as the post-conviction court cannot presume what the witness's testimony would have been. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Generally, presenting a witness at the hearing is the only way a petitioner can establish that "the failure to discover or interview a witness inured to his prejudice . . . or . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence." *Id*. Thus, even if the petitioner had established a deficiency on the part of trial counsel with regard to this possible witness, his failure to produce her at the hearing precludes relief on his ineffective assistance of counsel claim.

## II. Tenn. R. Evid. 615

Next, the petitioner contends that the post-conviction court committed reversible error by refusing to grant the petitioner's request to exclude trial counsel from the post-conviction proceedings pursuant to Tenn. R. Evid. 615. The record does establish that at the commencement of the post-conviction hearing, counsel for the petitioner did invoke "the rule" and request that trial counsel be excluded from the proceedings. The post-conviction court refused to comply with the request, noting that trial counsel was the "one being attacked" and that "he should be entitled to hear what is being said about him so he will know what to rebut." The petitioner contends that the post-conviction court's refusal to exclude trial counsel "elicited precisely the kind of unreliable testimony Rule 615 seeks to prevent." He contends that trial counsel was "permitted, even induced, to adjust his testimony in such a way that he was able to rebut all the petitioner's contentions."

Rule 615 of the Tennessee Rules of Evidence does provide that "at the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing." The purpose of the rule is to prevent one witness from hearing the testimony of another and adjusting his testimony accordingly. *State v. Harris*, 839 S.W.2d 54, 68 (Tenn. 1992). However, the rule "does not authorize exclusion of . . . a person whose presence is shown by a party to be essential to the presentation of the party's case." Tenn. R. Evid. 615. "The party seeking to avoid sequestration bears the burden of proving that a

-12-

Rule 615 exemption applies." *Palmer v. State*, 108 S.W.3d 887, 898 (Tenn. Crim. App. 2002). The application of this rule, called the rule of sequestration, is within the sound discretion of the trial court. *Id*.

This court has previously held that "'[g]iven the special circumstances which arise in a post-conviction proceeding in which a petitioner claims that his trial attorney was ineffective, it is entirely reasonable to conclude that the trial attorney's presence would be essential for the presentation of the state's case.'" *Palmer*, 108 S.W.3d at 898 (quoting *State v. Jerome Brown*, No. 03C01-09107-CR-00201, 1992 Tenn. Crim. App. LEXIS 761, at *22 (Tenn. Crim. App. Oct. 6, 1992)). This court has repeatedly concluded that a post-conviction court did not abuse its discretion by allowing trial counsel to remain in the courtroom during a petitioner's testimony. *Shavon Page v. State*, No. E2012-00421-CCA-R3-PC, 2012 Tenn. Crim. App. LEXIS 1094, at **24-25 (Tenn. Crim. App. Jan. 7, 2013); *Kevin White v. State*, No. E2004-02986-CCA-R3-PC, 2005 Tenn. Crim. App. LEXIS 868, at *5 (Tenn. Crim. App. Aug. 12, 2005); *Frankie Donald Releford v. State*, No. E2004-00695-CCA-R3-PC, 2005 Tenn. Crim. App. LEXIS 281, at **10-11 (Tenn. Crim. App. Mar. 28, 2005).

Given the above referenced law, we can discern no abuse of discretion in the instant case. Moreover, the petitioner has failed to specifically articulate what prejudice, if any, he suffered by allowing trial counsel to remain in the courtroom. *See Palmer*, 108 S.W.3d at 898. Rather, the petitioner merely suggests that trial counsel may have lied during his testimony. As referenced above, the post-conviction court specifically accredited the testimony given by trial counsel. Nothing on this record established that trial counsel altered his testimony or lied regarding his representation of the petitioner because he was allowed to remain in the courtroom. The petitioner has failed to establish any error or resulting prejudice. No relief is warranted.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE