IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2017

**BILLY DEAN SIZEMORE v. STATE OF TENNESSEE**

Appeal from the Circuit Court for Lewis County
No. 2016-CR-19    Deanna B. Johnson, Judge

No. M2016-02531-CCA-R3-PC

The Petitioner, Billy Dean Sizemore, appeals the summary dismissal of his petition for post-conviction relief. The State concedes that the post-conviction court erred in summarily dismissing the petition. Following our review, we reverse the judgment of the post-conviction court and remand for an evidentiary hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., J., joined. TIMOTHY L. EASTER, J., not participating.

Cory L. Ricci, Columbia, Tennessee, for the appellant, Billy Dean Sizemore.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Petitioner was convicted by a Lewis County Circuit Court jury of delivery of a Schedule II controlled substance and was sentenced to fourteen years in the Tennessee Department of Correction as a persistent offender. His conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. State v. Billy Dean Sizemore, No. M2013-01853-CCA-R3-CD, 2014 WL 5800747 (Tenn. Crim. App. Nov. 7, 2014), perm. app. denied (Tenn. Mar. 12, 2015).

The facts giving rise to the Petitioner's conviction were recited by this court on direct appeal as follows:

Joe Ashmore, a narcotics agent with the 21st Judicial District Drug Task Force, testified that on June 2, 2009, he received a telephone call from Dale Potter, a confidential informant (CI). Potter told Agent Ashmore that he had been in contact with the [Petitioner] and that the [Petitioner] claimed to have some pills to sell. Agent Ashmore and Agent Doug Totty met with Potter and Potter's wife, and Mr. Potter placed a recorded, controlled telephone call to the [Petitioner]. The State played the recorded call for the jury. During the call, Mr. Potter told the [Petitioner] that he wanted to "get a couple of more of them" and agreed to meet the [Petitioner] at a bridge near Mr. Potter's house.

Agent Ashmore testified that the agents searched the Potters and their vehicle for money and drugs and that he equipped Mr. Potter with a transmitter and recorder. Agent Ashmore was hoping the Potters would buy three morphine pills from the [Petitioner] for $20 each and gave Mr. Potter $60. The Potters went to the location on Fite Road. Agent Ashmore stated that he saw them meet the [Petitioner], who was in a black vehicle, and that the Potters and the [Petitioner] conducted the drug transaction, which was recorded. The State played the recording for the jury. During the transaction, the [Petitioner] told Mr. Potter, "I got $500 worth yesterday and now I got two left." After the drug buy, the Potters met Agent Ashmore at a predetermined location. Agent Ashmore took possession of two pills and $20. He also searched the Potters and their vehicle again. Agent Ashmore paid Mr. Potter $100 for his participation in the drug buy.

On cross-examination, Agent Ashmore testified that in 2007, he purchased Lortab from Mr. Potter. Mr. Potter pled guilty to a crime and began working as a CI for Agent Ashmore. On June 2, 2009, the [Petitioner] sold the Potters two morphine pills and kept two pills for himself. Agent Ashmore said he could not see "hand movements and hand to hands" during the transaction. He also did not see the Potters give any money to the [Petitioner].

On redirect examination, Agent Ashmore testified that it was not uncommon for drug dealers to keep some pills for themselves because many dealers were addicts. Dealers also held back pills in order to deliver them to other customers. On recross-examination, Agent Ashmore

acknowledged that he did not hear Mr. Potter's initial conversation with the [Petitioner] on June 2.

Deputy Douglas Totty of the Humphreys County Sheriff's Department testified that on June 2, 2009, he worked for the 21st Judicial District Drug Task Force and assisted Agent Ashmore with an investigation of the [Petitioner]. Deputy Totty searched the Potters' car before and after the drug transaction but did not find anything. He said he did not hear or see the transaction but kept in constant contact with Agent Ashmore by radio. On cross-examination, Deputy Totty testified that he was "in the vicinity" of the transaction and was present to assist Agent Ashmore in case "something went bad."

Glen J. Glenn, a special agent forensic scientist with the Tennessee Bureau of Investigation (TBI), testified that he analyzed the two pills received by Agent Ashmore. He determined that the pills were morphine, a Schedule II controlled substance.

Dale Potter testified that in 2001, he was convicted of failure to appear and simple possession of marijuana. He received probation for the latter offense but violated probation by failing to pay fines. In October 2007, Mr. Potter was charged with felony delivery of a drug but was convicted of a misdemeanor because he agreed to work as a CI. He received probation for the conviction but violated his probation, again due to nonpayment of fines.

Mr. Potter testified that on June 2, 2009, he telephoned the [Petitioner], whom he had met "through a friend of a friend," to find out if the [Petitioner] had any pills. The [Petitioner] said he did, so Mr. Potter telephoned agents at the drug task force and told them that he would be able to make a drug buy. Mr. Potter and his wife met with Agent Ashmore, and Agent Ashmore searched them and "put a wire" on Mr. Potter. Mr. Potter telephoned the [Petitioner] and arranged to meet him on Fite Road. Mr. Potter said that he was supposed to buy three 60-milligram morphine pills from the [Petitioner] for $20 each and that Agent Ashmore gave him $60.

Mr. Potter testified that he and his wife went to the location and that the [Petitioner] was there in a black Lincoln Continental. The [Petitioner] told Mr. Potter that he had purchased $500 worth of pills the previous day and had only four remaining. Mr. Potter asked to buy three pills, but the [Petitioner] wanted to keep two for himself, so Mr. Potter bought two pills,

leaving the [Petitioner] with two pills. Mr. Potter gave $40 to the [Petitioner], and the [Petitioner] put the money into his wallet. Mr. Potter returned to the agents and gave them the two pills and the remaining $20. Mr. Potter said he had not received anything from the State in exchange for his testimony.

On cross-examination, Mr. Potter testified that the agents did not pay him anything on June 2 and that he participated in the drug buy "just . . . to be doing it." Defense counsel showed Mr. Potter a document from the drug task force, showing that Mr. Potter had received $100, and Mr. Potter stated, "I didn't recall getting paid for it." He said he had known the [Petitioner] five or six months at the time of the buy but did not know where the [Petitioner] lived. He stated that he had been taking prescribed 100-milligram morphine pills for seven or eight years due to back pain but that he had never seen 60-milligram morphine pills prior to that day.

Kelly Potter, Dale Potter's wife, testified that on June 2, 2009, she worked as a CI for Agent Ashmore's investigation of the [Petitioner] and was responsible for driving her husband, who did not have a driver's license, to meet the [Petitioner]. Before the drug buy, the Potters met with drug task force agents, and the agents searched Mrs. Potter and her car. At first, Mrs. Potter said the agents "wired" her and her husband. However, she later stated that the agents may not have put a wire on her.

Mrs. Potter testified that she drove her husband to the end of Fite Road and that he got out to meet the [Petitioner]. Mrs. Potter remained in her car but could hear and see the transaction. She said that her husband gave money to the [Petitioner] and that the [Petitioner] "handed" him "two orange morphine 60s." After the transaction, the Potters met with Agent Ashworth. Mr. Potter gave the two pills and the remaining $20 to Agent Ashworth, and the agents searched Mrs. Potter and her car again.

Mrs. Potter testified that in July 2011, she was convicted of DUI involving prescribed medication and driving on a revoked license. She was sentenced to probation and completed probation. She said that she was testifying under subpoena in the present case and that she was not receiving anything from the State in exchange for her testimony.

On cross-examination, Mrs. Potter testified that her husband had been taking prescribed morphine for eleven years and that he used to take

60-milligram pills. Therefore, she recognized the 60-milligram pills on June 2.

Billy Dean Sizemore, 2014 WL 5800747, at *1-3.

On March 4, 2016, the Petitioner filed a pro se petition for post-conviction relief, alleging ineffective assistance of counsel and due process violations by the trial court. The post-conviction court appointed counsel, finding that the Petitioner presented a colorable claim. On June 8, 2016, appointed counsel filed an amended petition for relief, expounding on the Petitioner's allegations. The State filed an answer three weeks later.

On November 18, 2016, the post-conviction court denied relief, finding that an evidentiary hearing was not necessary because the "Petitioner has not raised 'substantial questions of fact as to events in which [Petitioner] participated.'" The court reviewed each of the issues raised in the Petitioner's amended petition and determined that he failed to prove his allegations by clear and convincing evidence. The Petitioner appealed.

## ANALYSIS

The Petitioner argues that the post-conviction court erred in rendering a dispositive decision on his petition without allowing him to present evidence or legal argument at an evidentiary hearing. He specifically asserts that he raised colorable claims for relief, the court erred in rendering a final judgment based solely on the pleadings, and the court applied an incorrect standard for determining whether a hearing should take place.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A petitioner for post-conviction relief "must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." Id. § 40-30-106(d). In order for a hearing to be granted, the petition must assert a "colorable claim." See Howell v. State, 151 S.W.3d 450, 460 (Tenn. 2004). A petition presents a "colorable claim," sufficient to withstand summary dismissal, when the facts alleged, "'taken as true'" and "'in the light most favorable to [the] petitioner'" would entitle the petitioner to relief under the Post-Conviction Procedure Act. Arnold v. State, 143 S.W.3d 784, 786 (Tenn. 2004) (quoting Tenn. Sup. Ct. R. 28, § 2(H)). If a petitioner makes this initial colorable claim for relief, an evidentiary hearing is held at which the petitioner must prove the allegations by clear and convincing evidence. Howell, 151

S.W.3d at 460 (citing Tenn. Code Ann. § 40-30-110(f)). We review the post-conviction court's dismissal of the petition, as an issue of law, de novo on the record without a presumption of correctness. See Burnett v. State, 92 S.W.3d 403, 406 (Tenn. 2002).

Here, the Petitioner alleged that trial counsel rendered ineffective assistance with regard to the Tennessee Rule of Evidence 404(b) hearing, in failing to request a limiting instruction concerning prior bad acts, and in failing to raise the limiting instruction issue in the motion for new trial and on appeal. The Petitioner alleged that there is a reasonable probability that, but for counsel's deficiencies, his statement would have been excluded as unfairly prejudicial, and the results of the trial and appeal would have been different. Taking the allegations in the petition in the light most favorable to the Petitioner, the Petitioner presented a colorable claim for relief and was entitled to an evidentiary hearing. We note that the post-conviction court, in its preliminary order, ruled that the Petitioner presented a colorable claim and appointed counsel. It appears that the post-conviction court denied the petition after determining that the Petitioner did not prove his allegations of ineffective assistance of counsel by clear and convincing evidence. However, "the ultimate success or failure of a petitioner's claims is not a proper basis for dismissing a post-conviction petition without conducting an evidentiary hearing." William Alexander Cocke Stuart v. State, No. M2003-01387-CCA-R3-PC, 2004 WL 948390, at *3 (Tenn. Crim. App. May 4, 2004). The Petitioner was not required to *prove* his claims in his petition; he was required to prove them at the evidentiary hearing. "The preliminary stage is not the appropriate forum for adjudication of the facts of the case." Charlton v. State, 987 S.W.2d 862, 865 (Tenn. Crim. App. 1998).

## CONCLUSION

Based on the foregoing authorities and reasoning, we reverse the judgment of the post-conviction court and remand for an evidentiary hearing.

_____
ALAN E. GLENN, JUDGE

-6-