FILED

03/20/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2019

**ANTHONY JAMES ZONNEVILLE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2012-B-1806     Seth W. Norman, Judge**

_____

**No. M2018-01754-CCA-R3-PC**

_____

Petitioner, Anthony James Zonneville, appeals the denial of his petition for post-conviction relief. Following a jury trial, Petitioner was convicted of possession with intent to sell or deliver .5 grams or more of cocaine in a drug free zone and simple possession of alprazolam. Petitioner contends on appeal that the trial court erred in denying the petition for post-conviction relief because he was denied effective assistance of counsel. Following a review of the briefs and the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Joseph L. Morrissey, Jr., Nashville, Tennessee, for the appellant, Anthony James Zonneville.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Dan H. Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

The facts of the case as set forth by this court on direct appeal are as follows:

Metropolitan Nashville Police Department (MNPD) Detective Jason Wong and his partner, Officer Watkins, were dispatched sometime between 8:00 and 9:00 p.m. on May 8, 2012, to a Nashville address on a

complaint of narcotics being sold. At first, Detective Wong accidentally drove past the duplex at the address. However, after realizing his mistake, he parked his car and walked back. As he walked toward the duplex, he observed two people sitting in a vehicle parked in the driveway. He approached from the rear on the driver's side as Officer Watkins approached on the passenger side. The driver's side window was down and he overheard the Defendant ask the passenger, "[h]ow much do you need?" He observed that the Defendant had in his lap some pills in one plastic baggie and a white substance in another plastic baggie. The Defendant was breaking off a piece of a white, rocky substance. Detective Wong stood by the window approximately one foot from the vehicle for approximately 45 seconds before the occupants realized he was there. He then announced himself, removed the Defendant from the driver's side of the vehicle, and placed him under arrest. His partner removed Dawn Stamps from the passenger side of the vehicle and placed her under arrest. The Defendant was searched, and $579 was found on his person. The vehicle was searched and eight items were seized as evidence. Detective Wong signed and submitted the Property/Evidence report at approximately 1:00 a.m. the next morning. The report lists under Property Description: 4.3 grams of cocaine, 1.3 grams of cocaine, 1.5 grams of cocaine, .4 grams of cocaine wrapped in a $5 bill, 15 Xanax pills, bottle of Naproxen containing 7 pills, LG Verizon black cell phone, and $579 U.S. currency.

On cross-examination, Detective Wong stated he was not surprised that certain details, such as his standing by the window for approximately 45 seconds and overhearing the conversation between the driver and passenger, were not included in the arrest report. When asked what he recovered from Ms. Stamps, Detective Wong said he found a folded five dollar bill containing .4 grams of cocaine between the passenger's seat and the center console. He stated he found a plastic corner baggie containing Xanax in the front driver's side floorboard. Detective Wong did not recall if Ms. Stamps had any money on her person but knew that no money was seized or recovered from her. No scales or unused baggies were found in the vehicle.

On redirect examination, Detective Wong testified he found three plastic baggies containing cocaine, one containing 4.3 grams, another containing 1.3 grams, and a third containing 1.5 grams. He observed the Defendant's breaking off part of the substance in the baggie later found to contain 4.3 grams of cocaine. He said it is common for the person buying cocaine to receive it wrapped in a one dollar or five dollar bill. He said Ms. Stamps was charged with simple possession of cocaine.

MNPD Detective Nicholas McClusky responded to the address at the request of Detective Wong. When he arrived, the Defendant and Ms. Stamps were in custody. He field tested and weighed the white substance found in the three baggies. The substances tested positive for cocaine base. He recalled the three baggies weighed 4.3 grams, 1.4 grams, and 1.3 grams, but he stated that he would need to check the paperwork to be sure of the weights.

MNPD Property and Evidence Lab Clerk Lou Ann Corcoran submitted the evidence, a submittal form, and a Request for Examination to the Tennessee Bureau of Investigation (TBI). She said each piece of evidence was marked with a tracking barcode linked to the complaint number. She identified the copy of the Property and Evidence Report that was previously entered for identification and entered as evidence following her testimony.

TBI Special Agent Ella Carpenter was qualified as an expert in forensic chemistry. Special Agent Carpenter received items for testing and each was assigned a unique identification number. She performed chemical analysis on three pieces of evidence she received and "memorialized" her findings in an Official Forensic Chemistry Report (the Report) which was entered as evidence without objection. The Report contains the following information:

**EXHIBIT(S):**
01-a          Rock-like substance
01-b          Tablets
01-c          Powder

| **RESULTS:** | **Controlled Substance** | **Schedule** | **Amount** |
|---|---|---|---|
| 01-a | Cocaine | II | 1.00 Gram(s) |
| 01-b | Alprazolam | IV | 15 Tablet(s) |
| One tablet was analyzed. | | | |
| 01-c | Cocaine | II | 4.00 Gram(s) |

No analysis was performed on additional powder. The gross weight of this additional powder is 2.50 grams. The total weight for all the additional powder would not exceed 26 grams. Other submitted items were not analyzed.

The Report is clear that she determined the substances she analyzed were cocaine and Alprazolam, and the cocaine was well in excess of 0.5 grams.

David Kline, manager of the Metropolitan Planning Department Mapping Division, created a map for this case showing a 1,000 foot buffer area around the property line of Hattie Cotton Elementary School marked by a red line. He highlighted the address where the Defendant was arrested in yellow and stated that the address was closer than 1,000 feet to the school property.

Steve Keel, School Security Operations Manager, testified that Hattie Cotton Elementary School was constructed in 1995 and was being used as a school on the date the Defendant was arrested.

*State v. Anthony James Zonneville*, No. M2014-00749-CCA-R3-CD, 2015 WL 4467731, at *1-3 (Tenn. Crim. App. July 22, 2015)

**Post-Conviction Hearing**

Petitioner testified that in addition to this case, he accepted a plea agreement in another case for sixteen years at thirty-five percent to be served consecutively to the sentence in this case, for an effective sentence of thirty-one years. Petitioner testified that he was told that all of the "open indictments" against him would be dismissed, and he would "keep [his] appeal rights to the 15-year sentence, and lose [his] appeal rights as to the 16, if [he] signed for the deal." Petitioner identified a letter from trial counsel concerning the terms of a plea offer in the present case. He testified that he received the letter after trial.

Petitioner testified that he was in and out of jail and on bond numerous times during the disposition of his cases. He contends that trial counsel never visited him in jail concerning the present case, and trial counsel only met with him two or three times before trial while Petitioner was out on bond. Petitioner claims that trial counsel did not convey any type of plea offer to him, and he was told not to worry about it and "everything would work out" because these were his first drug charges. Petitioner testified that he had known trial counsel for years and took him at his word. Petitioner said: "He's a good guy, you know. I can't say nothing bad about the man."

Petitioner testified that to his knowledge, there were no pretrial motions filed on his behalf. He claimed that he asked trial counsel several times to file a suppression motion because there were a lot of inconsistencies in the officers' account of the offense. Petitioner testified that one of the officers said that Petitioner had a pair of blue rubber gloves; however, Petitioner denied having the gloves. Petitioner also testified that there

- 4 -

were no street lights in the area as stated by the officer. He said that the officers were called to 1035 Granada Avenue, but Petitioner was parked at 1037 Granada Avenue. Petitioner did not believe that trial counsel visited the scene where he was arrested even though Petitioner explained the problems with the police officers' account of his arrest.

Petitioner testified that he told trial counsel that he did not believe there had been a 911 call; however, trial counsel insisted that there had been a call even though the 911 tape was not listed in discovery, and trial counsel did not have possession of it. Petitioner later learned that the 911 call had been made, and he requested a copy of the 911 tape. He thought that trial counsel could have obtained a copy of the tape through a diligent search.

Petitioner testified that about three to four weeks prior to trial he was involved in a bad car wreck. He had to undergo surgery for thirteen hours to repair a broken jaw and other broken bones in his face. His mouth was wired shut at the time of the trial. Peititoner stated that he was taking liquid codeine before and during his trial. He testified that this caused him to constantly fall asleep during the trial.

On cross-examination, Petitioner agreed that he was present for most of his trial. He acknowledged that he was convicted of theft of properly in 2005 and 2008, robbery in 2006, and burglary of a motor vehicle in 2008. Petitioner testified that Ms. Stamps would have testified that the drugs found in the car did not belong to Petitioner. He said: "I believe she was gonna [sic] say they was [sic] hers." Petitioner agreed that Ms. Stamps never told police that the drugs belonged to her, and he asserted that she was "scared for herself, too." He denied having a rock of cocaine in his hand when police approached him, and he thought that Ms. Stamps would have testified that police were lying about that.

Trial counsel testified that he had been an attorney for twenty years, and ninety-nine percent of his practice was criminal law. He was retained to represent Petitioner at trial but was appointed for appeal. Trial counsel noted that Petitioner was in jail for several months prior to trial and then made bond. He said: "[Petitioner] was in jail, off and on, not only for this case, but he had picked up . . . He would pick up a charge, get bonded out, get another charge, go back to jail. This cycle happened three or four times."

Trial counsel testified that the State made a plea offer prior to trial for what trial counsel thought was twenty years, at a "percentage not at 100," and he conveyed the offer to Petitioner. He knew that he visited Petitioner at least one time at the jail "because we had to discuss what to do to get the bond approved, because we had to have a source." Trial counsel testified that Petitioner also called him often from the jail.

Trial counsel testified that he spoke with Ms. Stamps. He said: "I don't remember at what point. I believe it was after the case had come up to criminal court. She was actually in my office when we did it. I either called him from – I think I called her rather, from the office phone." Trial counsel testified that Ms. Stamps did not confirm very much of what Petitioner had wanted her to say. Trial counsel said: "She actually said, she didn't remember some of it. She was under the influence at the time." He did not feel that Ms. Stamps would have exonerated Petitioner. Trial counsel testified that had Ms. Stamps been willing to testify as to what Petitioner wanted her to say, trial counsel would have been willing to call her as a witness and file a motion to suppress.

Trial counsel testified that the 911 call was about drug activity in the common courtyard of two buildings facing each other. Petitioner was "parked next to one of the units, and everybody kind of congregated in that area in between." Trial counsel testified that the address of the 911 call and the address where Petitioner was parked were next door to each other. Trial counsel received this information during discovery, and he knew what the responding officer's testimony would be. He agreed that the officers' testimony would have been that they were called to the area, and there was drug activity by Petitioner. Based on what the officers saw in plain view, trial counsel did not believe that a suppression hearing would have been fruitful.

On cross-examination, trial counsel agreed that there was only one letter concerning a plea offer in Petitioner's file. It was usually his habit to memorialize in writing a plea offer from the State. Trial counsel agreed that did not happen in Petitioner's case because "[h]e came into the office, frequently, so we were able to discuss it." He believed that the offer was a good deal for Petitioner. Trial counsel testified: "It was going to give him the least amount of time he probably would have gotten, or a lot less tha[n] he would have gotten at a sentencing hearing, especially if he had gone to trial on those."

Trial counsel testified that he drove by the arrest scene one time long before trial. He understood the "logistics," and he had photographs of the area, so he had a "pretty good idea of what it looked like." Trial counsel remembered that a street light was mentioned in discovery, but he did not recall seeing it when he drove by the area. There was a light "right next to the door of the unit to which they were closely parked." Trial counsel did not recall if he listened to the recording of the 911 call prior to trial, and he did not provide Petitioner with a copy of the recording. Trial counsel did not recall if he visited the evidence room. He knew that there were no blue gloves listed as evidence, and he pointed that out at trial.

Trial counsel clarified that he spoke with Ms. Stamps by phone, and she did not come to his office. He said that he asked Petitioner what Ms. Stamps would say, and Petitioner was not sure. Petitioner provided trial counsel with Ms. Stamps' contact information. Trial counsel agreed that Petitioner's statement was that the drugs were

sitting in between him and Ms. Stamps. However, the officer testified that Petitioner was wearing blue gloves and had a rock of cocaine in his hand when the officer walked up to the car, and he was handing the rock to Ms. Stamps to complete a drug transaction. Trial counsel noted that the officer was walking to the address of the 911 call and was a few feet from Petitioner's car when he heard Petitioner and Ms. Stamps talking. Trial counsel agreed that Petitioner told him that he was "snatched" from the car, and there was no way the officer could have seen a drug transaction. Petitioner thought that Ms. Stamps might corroborate his story. Trial counsel testified that Ms. Stamps' memory was not good, and "she had a terrible record – 30 convictions on her record, something like that." He also said that Ms. Stamps would have made an "awful witness."

Detective Jason Wong of the Metropolitan Nashville Police Department testified that he was involved in Petitioner's arrest in 2012. He testified as follows at the post-conviction hearing:

> When I approached the car, we initially drove past the address not knowing that, that was that, sitting out on the street. As I was walking back up, I noticed that there was two people sitting in a car. I could hear a conversation. They did not know that my presence was there, so I stood right where I was at. The windows were down, and I was able to hear the conversation.
>
> \* \* \*
>
> And the conversation was . . . It was a male voice saying, how much do you want or what do you want. It was a conversation about what was being handed over, as I was standing by the window looking in.

Based on his experience, he believed he was observing a drug transaction.

Detective Wong testified that Petitioner was in the driver's seat and handed "something over, that was a white rock substance, to the female passenger that was sitting in the passenger's seat. The rock substance appeared to him to be "cocaine or crack." Detective Wong testified that he stood near the car listening until Petitioner looked backward and saw him. Detective Wong then made his presence known to Petitioner.

Detective Wong testified that Petitioner got out of the car without a struggle, and he was compliant and cooperative with police. He did not recall Petitioner making any statement. Detective Wong testified that Ms. Stamps "was given a misdemeanor citation for a drug charge that was on her floorboard by her feet." He noted that Ms. Stamps did not claim ownership of any drugs in the car. Detective Wong testified that the rock-like substance in Petitioner's hand field tested positive for cocaine.

- 7 -

On cross-examination, Detective Wong testified that he arrived at the scene at approximately 7:00 p.m., and it was already dark. He did not know if Petitioner's car had tinted windows because the windows were down when he approached it. Detective Wong testified that he saw Petitioner hand Ms. Stamps a rock of cocaine while he was wearing gloves. He did not take the gloves as evidence at the time of Petitioner's arrest.

Concerning Petitioner's claim that trial counsel was ineffective for failing to file a motion to suppress and to meet with Donna Stamps, the post-conviction court summarized the testimony at the post-conviction hearing concerning this issue. The court made the following findings:

> The credibility and weight of witnesses' testimony is to be resolved by the post-conviction court. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The only significant inconsistencies in these accounts are the presence of the blue gloves and the exact location of the narcotics. The Court credits the testimony of Detective Wong. The presence or absence of the blue gloves is not material to the ultimate issue. Detective Wong testified that he could see and hear the transaction. There does not appear to be good cause for suppression and the petitioner makes no argument as to why the Court should have granted a suppression motion had trial counsel moved for suppression. This issue is without merit.

Although not raised as an issue on appeal, the post-conviction court also made credibility findings concerning Petitioner's claim in his post-conviction petition that he was unable to meaningfully assist in his defense at trial due to medical reasons. The post-conviction court found:

> The Court does not credit the testimony of the petitioner. The petitioner did not advise trial counsel at any point that he was having difficulty staying awake or comprehending the proceedings. The Court credits the testimony of trial counsel that he only observed the petitioner appearing sleepy after the lunch break and that the petitioner was an active participant in jury selection. The Court would have observed or been alerted by staff or counsel if the petitioner were asleep. The Court conducted the *Momon* hearing and was satisfied that the petitioner knew and understood his right not to testify. The petitioner testified that he had a good relationship with trial counsel. The Court does not find it credible that the petitioner was unable to comprehend the proceedings but alerted nobody and nobody observed the petitioner's difficulties.

**Analysis**

Petitioner appeals the judgment of the post-conviction court denying him relief for his claims of ineffective assistance of counsel. Petitioner argues that his trial counsel's representation fell outside the range of acceptable professional performance for failing to properly investigate his case. More specifically, Petitioner argues that trial counsel failed to investigate his case by only communicating one plea offer to him after trial; failed to file a motion to suppress; and failed to interview Ms. Stamps, who would have supported his defense. The State contends that Petitioner has not shown facts by clear and convincing evidence to establish that he received ineffective assistance of counsel. We agree with the State.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

*Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); *see Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); *Frazier v. State*, 354 S.W.3d 674, 679 (Tenn. 2010).

A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. T.C.A § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier*, 303 S.W.3d at 679.

A petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. at 687; see *Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Id.* at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1966) (*citing Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Furthermore, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

First, Petitioner contends that trial counsel failed to adequately investigate his case by providing him with only one written plea offer after the trial. We note that this specific issue does not appear to have been raised in the post-conviction petition; however, evidence was presented at the post-conviction hearing concerning the plea offer. Trial counsel testified that the State made a plea offer to Petitioner prior to trial for twenty years at a "percentage not at 100." Trial counsel specifically testified that he conveyed the offer to Petitioner. On cross-examination, trial counsel testified that he and Petitioner discussed the plea offer prior to trial because Petitioner came into his office frequently. He believed the offer was a good deal for Petitioner.

Although the post-conviction court did not make specific findings concerning the issue of trial counsel's failure to disclose a plea offer, the post-conviction court explicitly credited trial counsel's testimony on the issue of whether Petitioner was under the influence of codeine at the trial and unable to participate in his defense or comprehend the proceedings. The post-conviction court further found that Petitioner was not credible. The post-conviction court also explicitly credited the testimony of Detective Wong concerning the drug transaction and subsequent search and seizure of evidence over testimony by Petitioner. With these credibility findings, we are comfortable concluding that the post-conviction court implicitly found that Petitioner's entire testimony was not credible, as indicated by its denial of relief to Petitioner.

- 10 -

Next, Petitioner argues that trial counsel rendered deficient performance by failing to file a motion to suppress because trial counsel was unfamiliar with discovery provided by the State. Petitioner also contends that trial counsel was ineffective for failing to interview Dawn Stamps, the other occupant in the vehicle with Petitioner at the time of the drug transaction. Petitioner's argument on the suppression issue consists of one paragraph:

> Further the Appellant believes that trial counsel was unfamiliar [with] discovery provided by the State, specifically as counsel failed to file a single pre[-]trial motion specifically a motion to suppress the illegal search of Appellant's person. A proper and through [sic] investigation would have shown it would have been objectively impossible for the officer to have approached the vehicle in the manner described. This failure to file a motion to suppress should be found to be ineffective assistance of counsel.

Petitioner's argument on the issue of Ms. Stamps also consists of only one paragraph in his brief:

> Further trial counsel[ ] fail[ed] to seek out and interview the witness Ms. Stamps who could have testified to the actual events of the night, and further bolster[ed] the Appellant's theory of defense. By failing to even instruct his private investigator [to] run down this lead, trial counsel was clearly again ineffective in his representation.

The post-conviction court considered these issues together in its order denying post-conviction relief. The post-conviction court summarized the testimony from the post-conviction hearing made by Petitioner and trial counsel concerning the suppression issue and Ms. Stamps and the testimony of Detective Wong concerning the circumstances of the offense. As set forth above, the post-conviction court found:

> The credibility and weight of witnesses' testimony is to be resolved by the post-conviction court. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The only significant inconsistencies in these are the presence of the blue gloves and the exact location of the narcotics. The Court credits the testimony of Detective Wong. The presence or absence of the blue gloves is not material to the ultimate issue. Detective Wong testified that he could see and hear the transaction.

The post-conviction court further concluded that "[t]here does not appear to be good cause for suppression and the petitioner makes no argument as to why the Court should have granted a suppression motion had trial counsel moved for suppression."

- 11 -

The post-conviction court specifically stated that it credited the testimony of Detective Wong concerning the drug transaction and the subsequent search and seizure of evidence. Trial counsel testified at the post-conviction hearing that he received information about the 911 call during discovery, and he knew what the responding officers' testimony would be. He also drove by the area where Petitioner was arrested, and he had photographs of the area. Therefore, he understood the "logistics" and had a "pretty good idea" of what the area looked like. He also spoke with Ms. Stamps, who did not exonerate Petitioner or verify his version of events. Trial counsel testified that based on what the officers saw in plain sight at the time of Petitioner's arrest, he did not believe that a suppression hearing would have been at all fruitful. Petitioner has not demonstrated at the post-conviction hearing nor has he argued in his brief how a motion to suppress would have been successful in this case. It is a petitioner's burden to "submit evidence (and not just his testimony surmising on the merits of a pre-trial suppression motion) that the suppression motion would have been granted and that there is a reasonable probability" that the proceedings would have concluded differently. *Voltaire Younger v. State*, No. E2018-02168-CCA-R3-PC, 2019 WL 7049692, at *5 (Tenn. Crim. App. Dec. 19, 2019)(quoting *Charles Bradford Stewart v. State*, No. M2015-02449-CCA-R3-PC, 2017 WL 26455651, at *14 (Tenn. Crim. App. June 20, 2017).

As for Petitioner's claim that trial counsel failed to interview Ms. Stamps, the post-conviction court noted at the post-conviction hearing that "Ms. Stamps had passed away, so the petitioner is without fault for failing to present her potential testimony." At the post-conviction hearing, Petitioner testified that Ms. Stamps was in the car with him at the time of the offense. He believed that Ms. Stamps would have testified that the drugs found in the car did not belong to Petitioner and that they belonged to her. He also believed that Ms. Stamps would have said that police lied about seeing a rock of cocaine in his hand. Petitioner testified that trial counsel never communicated with Ms. Stamps.

However, trial counsel testified that he asked Petitioner what Ms. Stamps would say, and Petitioner was not sure. Petitioner gave him Ms. Stamps' contact information, and he spoke with her. She did not confirm much of what Petitioner wanted her to say. Trial counsel said: "She actually said, she didn't remember some of it. She was under the influence at the time." He did not feel that Ms. Stamps would have exonerated Petitioner. Trial counsel agreed that Petitioner's statement was that the drugs were sitting in between him and Ms. Stamps. However, Detective Wong, whose testimony the post-conviction court credited, testified that Petitioner was wearing blue gloves and had a rock of cocaine in his hand when Detective Wong walked up to the car, and Petitioner was handing the rock to Ms. Stamps to complete a drug transaction. Trial counsel noted that Detective Wong was walking to the address of the 911 call and was a few feet from Petitioner's car when he heard Petitioner and Ms. Stamps talking. Trial counsel noted that Ms. Stamps "had a terrible record – 30 convictions on her record, something like that." He said that she would have made an "awful witness." Trial counsel's testimony,

which we have already determined that the post-conviction court credited, specifically contradicts Petitioner's claim that trial counsel failed to interview Ms. Stamps. Petitioner is not entitled to relief on these grounds.

## Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE